Filed 3/30/23  P. v. Scott CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>SEDRIC SCOTT,<br><br>Defendant and Appellant. | B315262<br><br>(Los Angeles County Super. Ct. No. BA420534) |

APPEAL from an order of the Superior Court of Los Angeles County, Terry A. Bork, Judge.  Affirmed in part, reversed in part, and remanded.

Leslie Conrad for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Charles S. Lee and David E. Madeo, Deputy Attorneys General, for Plaintiff and Respondent.

In 2012, defendant and appellant Sedric Scott (defendant) snatched a gold chain off victim Patrick Lister (Lister) and a gang melee ensued during which Lister was fatally stabbed. Defendant was tried and convicted of second degree murder and the jury found true an enhancement allegation that the crime was gang related. Several years later, defendant filed a petition for resentencing under Penal Code section 1172.6 (former Penal Code section 1170.95).[1] The People stipulated defendant was eligible for resentencing and the trial court redesignated defendant's offense as second degree robbery, reimposed the gang enhancement found true, and resentenced defendant. We consider an issue on which our Supreme Court has granted review—whether section 1172.6 permits reimposing an enhancement in connection with a grant of section 1172.6 relief— and, if so, whether the gang enhancement reimposed here must still be vacated because of amendments made to the gang enhancement statute by Assembly Bill No. 333 (2021-2022 Reg. Sess.) (AB 333) that apply retroactively to defendant.

## I. BACKGROUND

A.    *The Murder*

Defendant, John Armstrong (Armstrong), and Curtis Lowe (Lowe) were members of the Swans criminal street gang. In May 2012, defendant and Armstrong approached Lister outside a market and asked where he was from. Lister did not respond and entered the market.

---

[1]    Undesignated statutory references that follow are to the Penal Code.

Defendant and Armstrong followed Lister inside, and defendant tore a gold chain from Lister's neck. As defendant ran out of the market, Lister gave chase. Defendant, Armstrong, and other members of the Swans gang then attacked Lister. Lowe ran from across the street and joined in the group assaulting Lister. At some point during the altercation, defendant pocketed the chain.

When the attack stopped, Lister's chest was covered in blood. Defendant returned the chain to Lister. Lister died days later from a six-inch-deep stab wound that pierced his heart. (*People v. Lowe* (Apr. 19, 2016, B260127) [nonpub. opn.] (*Lowe*).)

The market's surveillance camera, which captured portions of the attack, showed Lowe walking toward the market from the direction of the fight, moving something from his left hand to his right hand, and putting it in his pocket. Later, the video showed Lowe opening his right palm and looking down at it. (*Lowe*, supra, B260127.) Another Swans gang member, Mitchell Johnson, who was interviewed by police after the murder, claimed Lowe stabbed Lister, though he conceded he had not seen the actual act of stabbing himself. (*Lowe*, supra, B260127.)

### B. Charges and Trial

Defendant, Nathaniel Willard (Willard), Lowe, and Armstrong were charged with Lister's murder in 2014. The information alleged the murder was committed while the defendants were engaged in the commission of a robbery and was committed for the benefit of, at the direction of, and in association with a criminal street gang.

During the defense case, defendant admitted he was a member of the Swans gang. Defendant testified he accidentally

3

broke Lister's chain during the altercation, but he later gave it back to Lister. Defendant said Lister was not bleeding when he returned the chain, and he had not known Lister had been stabbed. (*Lowe*, *supra*, B260127.)

Officer Bobby Romo testified about the Swans gang, which was a "Blood" gang. According to Officer Romo, gang members want members of the community to fear them so the community members will be reluctant to cooperate with the police out of fear of retaliation. They also want to be feared and respected by members of other gangs. Fear and respect make it easier for them to get away with crimes.

The prosecution introduced two minute orders from other cases during Officer Romo's testimony to satisfy the predicate crime requirements of the gang enhancement statute as it existed at the time. The minute orders were from the prosecutions of one Trotter and one Hall. Officer Romo testified he had been involved in the investigation of the Trotter case. Trotter was convicted of assault with a firearm for an offense committed on February 20, 2010. Officer Romo explained the officers responded to a call at what was basically a warehouse party attended by numerous Blood gang members. Officers observed Trotter with a firearm, the officers pursued him, and Trotter fired a shot at the officers. Officer Romo opined Trotter was a member of the Swans gang on the date the offense was committed. As to the Hall case, Officer Romo testified he was also involved in the investigation. He explained Hall was convicted of attempted murder for an offense committed on June 19, 2008. Officer Romo opined Hall was a member of the Swans gang on the date the offense was committed.

4

After the presentation of evidence at defendant's trial, the jury was instructed that defendant and his accomplices were being prosecuted under three theories: (1) malice murder, (2) felony murder, and (3) murder pursuant to the natural and probable consequences doctrine. The jury was also instructed that if it found defendant guilty it would also have to decide whether the People had proven the defendant committed the crime for the benefit of, at the direction of, or in association with a criminal street gang.

The jury convicted defendant of second degree murder. It found true allegations that the murder occurred during the commission of a robbery and the murder was committed for the benefit of, at the direction of, or in association with a street gang. The trial court sentenced defendant to 15 years to life in prison for the murder and stayed the terms on the special circumstance and gang enhancement.

Defendant appealed the judgment of conviction. A prior panel of this court affirmed defendant's conviction but struck the jury's true finding on the robbery-murder special circumstance. (*Lowe, supra*, B260127.)

C.    *The Petition for Resentencing*

Defendant filed a petition for resentencing under section 1172.6 and the People opposed the petition.[2] The trial court appointed counsel for defendant. After a series of continuances, defendant filed a reply brief in February 2020. Following

---

[2]    The appellate record does not include a copy of defendant's initial petition. The People's opposition to the petition represents the petition was filed on December 27, 2018.

additional continuances (many due to the COVID-19 pandemic) and additional briefing, the trial court found defendant made a prima facie case for relief and set the matter for an evidentiary hearing in February 2021. A few months later, the parties stipulated defendant was eligible to have his murder conviction vacated under section 1172.6, subdivision (d)(2), and redesignated by the court in accordance with section 1172.6, subdivision (d)(2) and/or (d)(3).

The trial court held a hearing in September 2021. The court accepted the stipulation of the parties and vacated defendant's murder conviction. The court found that since the murder count in the case was charged generically and the target offense was not designated or charged, robbery in the second degree should be deemed the underlying felony pursuant to section 1172.6, subdivision (e).[3] The court stated the original sentencing judge had not stricken the gang enhancement and found that decision was supported by the facts. Based on its own review of the evidence, the court was convinced beyond a reasonable doubt that defendant was guilty of the robbery and the gang allegation. It recognized its authority to strike the gang enhancement, but declined to do so.

The court resentenced defendant to 15 years in prison, comprised of the upper term of five years for the base term, plus ten years for the gang enhancement. The court found the following circumstances in aggravation: the crime involved great

---

[3]     The statutory subdivision provides that a conviction vacated pursuant to the statute shall be redesignated as the target offense or underlying felony for resentencing purposes when murder was charged generically and the target offense was not charged.

violence and great bodily harm; the manner in which the crime was carried out indicated planning, sophistication, or professionalism; defendant engaged in violent conduct that indicated a serious danger to society; defendant's prior convictions were numerous or of increasing seriousness; and defendant had served a prior prison term.

## II. DISCUSSION

Two published decisions are split on whether a section 1172.6 court can impose a sentencing enhancement after vacating a murder conviction and resentencing on the target offense or underlying felony. (*People v. Arellano* (2022) 86 Cal.App.5th 418, 435-436 [imposing enhancement not permitted], review granted Mar. 15, 2023, S277962 (*Arellano*); *People v. Howard* (2020) 50 Cal.App.5th 727, 741-742 [imposing enhancement permitted], review denied Sept. 9, 2020, S263486 (*Howard*).) As noted, our Supreme Court has granted review in *Arellano* to decide the issue, and pending the Supreme Court's decision, we believe the result in *Howard* is correct on the facts here: section 1172.6 did not preclude the trial court from reimposing the gang enhancement as part of defendant's new sentence. But we also hold the proof of that enhancement is inadequate under current law (specifically the redefinition of a "pattern of criminal gang activity"), which the parties agree applies retroactively to defendant. We will accordingly reverse and remand with instructions to permit the People to prove the gang enhancement allegation under current law, if they so choose, and to resentence defendant (which will be required regardless of the People's election).

7

### A.    *Imposition of the Gang Enhancement*

Defendant challenges the trial court's decision to impose the gang enhancement on his redesignated conviction, arguing the text of section 1172.6, subdivision (e) does not permit it. The court in *Howard* concluded a court is permitted to apply an enhancement to a redesignated conviction. (*Howard, supra*, 50 Cal.App.5th at 741-742 ["When the court redesignates the murder conviction as the underlying felony [citation], may the court impose enhancements relative to that felony? [S]ubdivision (e) is silent with respect to how a court resentences a defendant after redesignating the underlying felony. Consistent with the legislative goal of placing Howard after resentencing in a situation where the murder and any related enhancements no longer exist, Howard's resentencing may not include count-specific enhancements *unless* the People establish them related to the underlying felony by evidence presented at the hearing on the section [1172.6] petition. Our conclusion finds support in the principle that '[t]o the extent the court is determining the sentence to impose after striking the murder conviction, the traditional latitude for sentencing hearings should be allowed.' (Couzens et al., [ ]Sentencing Cal. Crimes[ (The Rutter Group 2019)] ¶ 23.51 (J)(2), p. 23-157.)"].) The court in *Arellano* held to the contrary. (*Arellano, supra*, 86 Cal.App.5th at 436 ["By directing that the vacated conviction shall be redesignated only 'as the target offense or underlying felony for resentencing purposes' (§ 1172.6, subd. (e)) and failing to mention sentence enhancements, the Legislature spoke to both redesignation of the conviction and resentencing for that conviction. That is, through the specific language it chose for section 1172.6, subdivision (e), the Legislature stated that 'for resentencing purposes,' the newly

redesignated conviction shall include only the offense upon which liability for murder or attempted murder was based. [¶] Although this interpretation of section 1172.6, subdivision (e), limits resentencing to the target offense or underlying felony, such interpretation does not result in absurd consequences the Legislature did not intend. It simply limits a petitioner's exposure in a relatively definite manner to only a specific offense and avoids the complexities that could arise in deciding which of the myriad sentencing enhancements in our penal law might be applicable to a particular factual scenario"].)

Our Supreme Court will definitively resolve the question, but we believe the result in *Howard* better comports with the purpose of section 1172.6 and the goal of evenhanded sentencing. We hold section 1172.6 does not bar—at least in theory (a qualification necessary in light of the issue we reach next)—the trial court from reimposing a gang enhancement in resentencing defendant.

> B. *Defendant's Sentence Must Be Vacated to Account for Retroactive Amendments to Section 186.22*
> 1. *Assembly Bill 333*

"'In 1988, the Legislature enacted the California Street Terrorism Enforcement and Prevention Act (STEP Act; § 186.20 et seq.) to eradicate "criminal activity by street gangs."' [Citation.] Among other things, the STEP Act created 'a sentencing enhancement for a felony committed "for the benefit of, at the direction of, or in association with any criminal street gang" [citation].' [Citation.]" (*People v. Tran* (2022) 13 Cal.5th 1169, 1205-1206 (*Tran*).)

Effective January 1, 2022, AB 333 amended subdivision (f) of section 186.22. (See Stats. 2021, ch. 699, §§ 1-5.) AB 333 made a number of changes to the law on gang enhancements, three of which are relevant here: "First, it narrowed the definition of a 'criminal street gang' to require that any gang be an 'ongoing, *organized* association or group of three or more persons.' (§ 186.22, subd. (f), italics added.) Second, whereas section 186.22, former subdivision (f) required only that a gang's members 'individually *or* collectively engage in' a pattern of criminal activity in order to constitute a 'criminal street gang,' Assembly Bill 333 requires that any such pattern have been '*collectively* engage[d] in' by members of the gang. (§ 186.22, subd. (f), italics added.) Third, Assembly Bill 333 also narrowed the definition of a 'pattern of criminal activity' by requiring that (1) the last offense used to show a pattern of criminal gang activity occurred within three years of the date that the currently charged offense is alleged to have been committed; (2) the offenses were committed by two or more gang 'members,' as opposed to just 'persons'; (3) the offenses commonly benefitted a criminal street gang [and the common benefit is more than reputational]; and (4) the offenses establishing a pattern of gang activity must be ones other than the currently charged offense. (§ 186.22, subd. (e)(1), (2).)" (*Tran, supra*, 13 Cal.5th at 1206.)

The Attorney General concedes the substantive changes to section 186.22 apply retroactively to defendant pursuant to *In re Estrada* (1965) 63 Cal.2d 740. Precedent demonstrates the concession is appropriate. (E.g., *Tran, supra*, 13 Cal.5th at 1207; *People v. E.H.* (2022) 75 Cal.App.5th 467, 478 (*E.H.*).) The parties disagree, however, as to whether remand is required as a result of the retroactive changes.

10

## 2. *Remand is required*

The current version of section 186.22, subdivision (f) provides that a "criminal street gang" means "an ongoing, organized association or group of three or more persons . . . whose members collectively engage in, or have engaged in, a pattern of criminal gang activity." (§ 186.22, subd. (f).) As pertinent here, subdivision (e)(1) provides that a "pattern of criminal gang activity" may be established by proving the commission of two or more enumerated offenses within a certain time period, provided the offenses "were committed on separate occasions or by two or more [gang] members, the offenses commonly benefited a criminal street gang, and the common benefit of the offense is more than reputational . . . ." (§ 186.22, subd. (e)(1).) Subdivision (g) provides the following, nonexclusive, list of examples of a common benefit that is more than reputational: "financial gain or motivation, retaliation, targeting a perceived or actual gang rival, or intimidation or silencing of a potential current or previous witness or informant." (§ 186.22, subd. (g).)

The evidence presented at defendant's trial, which was the only evidence before the section 1172.6 court, does not suffice to prove the proffered predicate crimes commonly benefited the gang in a way that was more than reputational. (§ 186.22, subd. (e)(1).) Officer Romo's testimony did not address any benefit to the gang specifically provided by the predicate acts, much less establish the nature of any such benefit.

The Attorney General disputes this, arguing the evidence would permit an inference the crimes were committed for a non-reputational common benefit because Officer Romo testified that gang members commit crimes to force the community to fear them and fear retribution, violence is a likely consequence of a

11

rival gang member's presence in gang territory, and gang members expect fellow members to provide backup for crimes. None of that directly addresses the predicate crimes committed by Trotter and Hall, however, and regardless, the testimony is insufficient to establish any common benefit was "more than reputational." (§ 186.22, subd. (e)(1).)

Because AB 333 took effect after defendant's trial and the resentencing proceedings before the section 1172.6 court, reversal is required but the People will have the opportunity to prove up the gang enhancement under current law. (*Tran*, *supra*, 13 Cal.5th at 1207; *E.H.*, *supra*, 75 Cal.App.5th at 480.)

### C.    *Additional Sentencing Claims*

Senate Bill 567 became effective January 1, 2022. (Stats. 2021, ch.731, §§ 1.3, 3(c).) "Pursuant to Senate Bill No. 567, section 1170, subdivision (b) has been amended to make the middle term the presumptive sentence for a term of imprisonment; a court now must impose the middle term for any offense that provides for a sentencing triad unless 'there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial.' (§ 1170, subd. (b)(1) & (2).)" (*People v. Lopez* (2022) 78 Cal.App.5th 459, 464 (*Lopez*).)

The People appropriately concede the amended version of section 1170, subdivision (b) would apply retroactively in this case because it is an ameliorative change in the law applicable to nonfinal convictions on appeal. (E.g., *People v. Flores* (2022) 73

12

Cal.App.5th 1032, 1039; *Lopez, supra*, 78 Cal.App.5th at 465; *People v. Dunn* (2022) 81 Cal.App.5th 394, 403.)  They dispute, however, defendant's assertion that remand for resentencing under the amended law is necessary.

We have already determined the case must be remanded for further proceedings concerning the gang enhancement and we accordingly need provide no further directions concerning Senate Bill 567 because resentencing will be required and prevailing law will apply.

Defendant also argues, and the People agree, that remand is necessary for the trial court to correct his custody credits.  This can be corrected during resentencing.

## DISPOSITION

Defendant's sentence is vacated. The cause is remanded with directions to permit the People, if they so elect, to prove the section 186.22, subdivision (b)(1) enhancement beyond a reasonable doubt under current law. Regardless of the People's election, the trial court shall resentence defendant in a manner consistent with this opinion. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

BAKER, J.

We concur:

RUBIN, P. J.

MOOR, J.